IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 17-2558-MV |
| | ) | |
| vs. | ) | |
| | ) | |
| **ARTHUR PERRAULT,** | ) | |
| | ) | |
| Defendant. | ) | |

<u>MOTION TO DETAIN DEFENDANT PENDING TRIAL</u>

The United States respectfully submits this motion to detain the defendant, Arthur Perrault (hereinafter, "Defendant"), pending trial on the indictment.  *See* 18 U.S.C. § 3142.  Defendant is a serial child molester who abused numerous victims over the course of more than 20 years as a Catholic priest in New Mexico and Rhode Island.   He fled the United States in 1992 when news of his horrific criminal conduct became public. Defendant has lived in Morocco for more than two decades.  He has no current personal or family ties to New Mexico.  Indeed, he is only present in the United States today because Morocco recently expelled him involuntarily at the request of the federal government and transferred him to the custody of the Federal Bureau of Investigation ("FBI") for his return to the United States.  Under these circumstances, Defendant poses an extreme risk of flight and danger to the community that this Court cannot mitigate with any conditions of release – no matter how restrictive.  See 18 U.S.C. § 3142(e).

This Court should therefore order Defendant remanded to the custody of the U.S. Marshals Service pending trial.

I.      RELEVANT FACTS AND PROCEDURAL HISTORY

        A.      Defendant's Background as Catholic Priest

According to records obtained from the Archdiocese of Santa Fe, Defendant was ordained a Catholic priest in Hartford, Connecticut on May 7, 1964.  He was granted the "faculties of the Archdiocese of Santa Fe" on March 28, 1966.  He was "canonically received into the Archdiocese of Santa Fe" on August 14, 1973.  Church records and witness statements establish that Defendant worked as a teacher at St. Pius X High School and served as a pastor at some of Albuquerque's largest parishes, including Annunciation, Assumption, Our Lady of Guadalupe, and St. Bernadette's.  Defendant also acted as a military chaplain during this period of time, which gave him access to Kirtland Air Force Base.  According to various witnesses and news accounts, Perrault fled New Mexico in 1992 when allegations that he sexually abused children became public.  The Archbishop suspended his faculties with the Archdiocese of Santa Fe on October 20, 1992.

Since 1992, numerous victims have filed lawsuits in New Mexico District Court alleging that Defendant sexually abused them.  Several victims have received monetary settlements from the Archdiocese of Santa Fe and the Servants of the Paraclete, a facility in Jemez, New Mexico that previously "treated" Defendant and other priests accused of pedophilia.  New Mexico judges have also entered at least one default judgment against Defendant who – until now – was residing outside the United States and not accountable

to American courts.  In 2016, Defendant submitted a letter to a New Mexico judge in a civil matter stating that he had resided in Tangier, Morocco for twenty-three years. Defendant stated in the letter that he received about $17,000 in retirement income in 2015.  However, Defendant did not voluntarily return to the United States to respond to the lawsuits against him.

          **B.**      **Charged Offenses**

The charges in the Indictment stem from conduct that occurred at Kirtland Air Force Base and Santa Fe National Cemetery.  Both of those locations are within the special maritime and territorial jurisdiction of the United States.[1]  The FBI began investigating Defendant in 2016 after a source alerted federal authorities that Defendant had sexually abused "John Doe" within the boundaries of Kirtland Air Force Base and at other locations.  Further investigation revealed that Defendant also sexually abused numerous other children and young adults in New Mexico over a period of more than twenty years.  Although the investigation established that Defendant sexually abused

---

[1] For all but one known victim of sexual abuse by Perrault, there is no basis for federal jurisdiction.  Under federal law, the offense of aggravated sexual abuse, in violation of 18 U.S.C. § 2241, must occur within the special maritime and territorial jurisdiction of the United States.  The same is true for the offense of abusive sexual contact, in violation of 18 U.S.C. § 2244.  Private property is not part of the special maritime and territorial jurisdiction.  However, military installations and national cemeteries are within such jurisdiction. See e.g., *United States v. Carter*, 430 F.2d 1278, 1280 (10th Cir. 1970).  The Department of Justice's limited jurisdiction over sexual abuse and contact offenses prevents the United States from pursuing additional charges against the other known victims of Defendant's abuse.

several victims on Kirtland Air Force Base, John Doe was the only victim who Defendant abused on federal property within the applicable statute of limitations period.[2]

Specifically, John Doe has informed investigators that he met Defendant while serving as an altar boy at a parish in Albuquerque.  According to John Doe, he often accompanied his mother to the parish where she worked as a volunteer. John Doe has stated that Defendant groomed him for sexual abuse by giving him personal attention and hugging, touching, and kissing him on the head.  Defendant also gave John Doe gifts (such as a military medal, stereo, and video game player) and took him to restaurants and an amusement park.  John Doe has also informed investigators that Defendant often smoked a pipe.

According to John Doe, Defendant abused him for the first time in the church rectory when John Doe was about ten or eleven years old.  John Doe has told investigators that Defendant fondled John Doe's penis under John Doe's clothes and put his finger in John Doe's anus.  John Doe has also informed investigators of specific instances of sexual abuse occurring at Kirtland Air Force Base.  John Doe estimates that Defendant abused him at the base chapel approximately ten times.  On one particular occasion, Defendant abused him in Defendant's office by penetrating John Doe's anus with Defendant's fingers.[3]  In a separate incident, Defendant touched John Doe's genitals

---

[2] "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse . . . of a child under the age of 18 years shall preclude such prosecution during the life of the child, or for ten years after the offense, whichever is longer."  18 U.S.C. § 3283.

[3] This incident is the basis for Count One of the indictment.

over his clothing in a pew of the main chapel area.[4]   On at least two more occasions, Defendant sexually abused John Doe in Defendant's car while on base.  According to John Doe, these incidents involved Defendant fondling John Doe's genitals under John Doe's clothing, penetrating John Doe's anus with his fingers, and performing oral sex on John Doe.[5]

John Doe has also informed investigators about further sexual abuse by Defendant at Santa Fe National Cemetery, which is also within the special maritime and territorial jurisdiction of the United States.  According to John Doe, Defendant abused him at this location approximately three times.  At least once, Defendant performed oral sex on John Doe while masturbating.  Defendant's sexual abuse at the cemetery also included inserting Defendant's finger into John Doe's anus.[6]

### C.    Corroboration of Other Victims

Several of Defendant's other victims have corroborated John Doe's accounts of sexual abuse by describing their own similar experiences.  Like John Doe, numerous other victims say Defendant sexually abused them while they were in their later years of elementary school or middle school.   Many of these victims were altar boys like John Doe.  Often, Defendant got to know his victims' parents and took advantage of their trust in allowing their children to spend time with him.  Several victims also say Defendant groomed them for abuse with gifts and meals.

---

[4] This incident is the basis for Count Five of the indictment.
[5] Counts Two through Four of the indictment are based on conduct in Defendant's car.
[6] Counts Six and Seven of the indictment are based on Defendant's conduct at Santa Fe National Cemetery.

At least two other victims specifically allege that Defendant sexually abused them on Kirtland Air Force Base, including inside of Defendant's office at the base chapel and inside of Defendant's car.  At least three other victims say Defendant took them to the base, but did not actually abuse them there.  At least four other victims say Defendant masturbated while abusing them.  At least three say Defendant performed oral sex on them and/or penetrated their anuses with his fingers.  Although some victims report single acts of abuse, most describe ongoing abuse over the course of several months or years.  Multiple victims also affirm John Doe's account that Defendant often smoked a pipe.  Several victims remember Defendant wearing silk underwear.

There is also evidence in this case that Defendant admitted to sexually abusing one of these other victims.  Indeed, investigators have obtained an apology letter to this victim's parents blaming his conduct on a cancer diagnosis, which was not true. Defendant wrote this letter in 1971, which was twenty years before Defendant abused John Doe.

## II.   APPLICABLE LAW

A defendant charged with a criminal offense is entitled to a hearing before a magistrate judge on the issue of his or her pre-trial detention. *See* 18 U.S.C. § 3142(f). At such a hearing, the magistrate judge must consider "(1) the nature and circumstances of the offense charged[;] … (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including … [the defendant's] criminal history … and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

6

At a detention hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence and proving dangerousness by clear-and-convincing evidence. 18 U.S.C. § 3142(f); *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). The ultimate "burden of persuasion … always remains with the [United States]." *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991). However, there is a presumption of detention in cases involving minor victims under 18 U.S.C. § 2241. *See* 18 U.S.C. § 3142(e)(3)(E). When this presumption applies, the burden of production shifts to the defendant. *Stricklin*, 932 F.2d at 1354.[7]

At the completion of the detention hearing, the magistrate judge shall issue a detention order, pursuant to 18 U.S.C. § 3142(i), when "the jud[ge] finds that no … conditions [of release] will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). However, the magistrate judge may release the defendant from custody when the defendant's risk of flight and danger to the community can be adequately mitigated. *United States v. Bustamante-Conchas*, 577 Fed. Appx. 803, 805 (10th Cir. 2014).

III.   <u>ARGUMENT FOR DETENTION</u>

This Court should remand Defendant to the custody of the U.S. Marshals pending trial. At a detention hearing, the United States will establish by a preponderance of the evidence that Defendant poses a very serious risk that he will flee the country again in

---

[7] This "burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the . . . court in determining whether to release or detain." *Id*. at 1355.

order to avoid prosecution and imprisonment for his crimes.   The United States will also prove by clear and convincing evidence that Defendant poses an extreme danger to the community given his long history of child sexual abuse against vulnerable victims.   The United States will further prove that there are no conditions of pretrial release that would mitigate Defendant's extreme flight risk and dangerousness.   The prosecution addresses each of the four factors supporting detention in further detail below.

       A.      Nature and Circumstances of the Offense

       The indictment charges Defendant with very serious offenses.   Indeed, he faces imprisonment for life if convicted of any of the five counts of aggravated sexual abuse. See 18 U.S.C. §§ 2241(c).   Under the advisory sentencing guidelines, Defendant's term of imprisonment would be at least 97-121 months.[8]   See U.S.S.G. §§ 2A3.1, 2A3.4, Sentencing Table.   Naturally, the probability of such a long term of imprisonment gives Defendant a powerful incentive to flee – especially as an 80-year-old man – who would almost certainly spend the rest of his life in prison if convicted.   *See United States v. Munoz-Hernandez*, No. CR 12-0128 JB, 2012 U.S. Dist. LEXIS 161970, at *31-32 (D.N.M. Nov. 5, 2012)(Browning, J.)(noting that "[i]n the face of such a lengthy term of imprisonment [10 years to life], and the evidence against him, [the defendant] might be tempted to flee . . . rather than spend a good portion of his life in an American prison").

---

[8] Under the guidelines in place in 1991 and 1992, the base offense level for aggravated sexual abuse was 27.  Defendant would be subject to an enhancement of four levels for acts he committed when the victim was less than twelve years old and a separate two-level enhancement because of the custody, care, and supervisory control Defendant exercised over the victim.  This guideline estimate assumes no enhancements apply and Defendant receives a three-level reduction for acceptance of responsibility.

The nature and circumstances of the charged offenses provide very compelling reasons to remand Defendant to the custody of the U.S. Marshals pending trial.

      B.      Weight of the Evidence

The evidence supporting the indictment is extremely strong.   The charges in this case are not founded on a criminal complaint.  Rather, the charges arise from an indictment returned by a federal grand jury after a detailed presentation of evidence.  As explained above, John Doe has provided investigators with a detailed and thorough account of Defendant sexually abusing him on multiple occasions at Kirtland Air Force Base, Santa Fe National Cemetery, and other locations in New Mexico.  John Doe's account is highly credible, especially given the substantial corroborating evidence from other witnesses who describe similar abuse by Defendant, including additional acts at Kirtland Air Force Base.   It is extremely persuasive that so many witnesses describe similar grooming, abuse, and other distinguishing facts such as Defendant's pipe smoking and silk underwear.   Defendant's letter confessing to the abuse of one particular victim further strengthens the evidence available for conviction.  Of course, the rules of evidence are very generous in allowing the prosecution to offer evidence of other sexual abuse crimes at trial.  *See* Fed. R. Evid. 413 ("[T]he court may admit evidence that the defendant committed any other sexual assault.  This evidence may be considered on any matter to which it is relevant.").  This makes the case against Defendant very strong, notwithstanding the scarcity of direct physical evidence and the passage of time since the crimes occurred.

Collectively, the serious nature and circumstances of the charges and the strength of the evidence would almost certainly cause Defendant to flee unless he is detained pending trial.  Indeed, the proximity of New Mexico to the southern border of the United States greatly enhances Defendant's flight risk, particularly because he has proven that he will relocate abroad to avoid the American judicial system.  *Munoz-Hernandez*, 2012 U.S. Dist. LEXIS 161970, at *31-32 ("[t]he fact that New Mexico runs along the Mexican border increases the risk of flight to Mexico"  and "decreases the ability of law enforcement officers to timely respond to a defendant's flight, even if the Court were to require [Defendant] to wear a GPS device during his release.").

C.      Defendant's Criminal History

Defendant has no known criminal history in the United States.  Investigators are still trying to determine if he has any criminal history in Morocco or elsewhere.  Nevertheless, Defendant is a defendant in several lawsuits alleging sexual abuse of children in New Mexico.  Hence, Defendant would be tempted to flee in order to avoid accountability in these judicial proceedings as well.  This is another factor favoring pre-trial detention.

D.      Danger to the Community

There is clear and convincing evidence that Defendant poses an extreme danger to the community given his long history of sexual abuse against children.  Defendant abruptly left New Mexico more than twenty-five years ago.  Thus, he does not have any family or friends here who might serve as third-party custodians.  Even if he did, the

Court should not release Defendant to an ordinary citizen who is unqualified to prevent him from fleeing or endangering others.

A halfway house is also entirely unsuitable for Defendant.  At 80 years old, he is not in a position to work or go to school during the day, as halfway house residents are ordinarily required to do.  But more importantly, a halfway house it is not a secure facility with barriers and law enforcement personnel present to prevent his escape and/or endangerment of others.  A halfway house is also not equipped to monitor Defendant's conduct closely.  Rather, such a facility allows free interaction among residents in a far less restrictive environment than jail.  This would not prevent Defendant from harming other residents or using them (perhaps unwittingly) to gain access to children, particularly over the internet.   The halfway house also generally permits residents to possess wireless phones (including those with internet access) and it is unreasonable to believe Defendant could not gain access to a cell phone at the halfway house if he was determined to do so.

IV.    <u>CONCLUSION</u>

The applicable factors discussed above should easily persuade this Court that Defendant must be detained pending trial.  Clearly, there are "no . . . conditions [of release that] will" mitigate the extraordinary risk of flight and dangerousness posed by Defendant and "reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  This is especially true because a presumption of detention applies in this case.  Under these circumstances, this Court should remand Defendant to the custody of the U.S. Marshals pending trial on the indictment.

WHEREFORE, the United States requests that this Court grant this motion to detain.

Respectfully Submitted,

JOHN C. ANDERSON
United States Attorney


_/s/_____
SEAN J. SULLIVAN
HOLLAND S. KASTRIN
Assistant United States Attorneys


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of September, 2018, I filed the foregoing pleading electronically through the CM/ECF system, and served counsel of record with this pleading by email.