```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF NEW MEXICO

 3     _____
                                       )
 4     UNITED STATES OF AMERICA,       )    No. 17-cr-02558-MV
               Plaintiff,              )
 5                                     )
          vs.                          )    Aspen Courtroom
 6                                     )    Santa Fe, New Mexico
       ARTHUR PERRAULT,                )
 7             Defendant.              )    October 16, 2018
       _____)    1:31 p.m.
 8

 9                     TRANSCRIPT OF PROCEEDINGS
                      DEFENDANT'S APPEAL OF DETENTION
10            BEFORE THE HONORABLE MARTHA A. VÁZQUEZ
                  UNITED STATES DISTRICT COURT JUDGE
11
       APPEARANCES:
12
       For the Plaintiff:  HOLLAND S. KASTRIN, ESQ.
13                         SEAN J. SULLIVAN, ESQ.
                           UNITED STATES ATTORNEY'S OFFICE
14                         District of New Mexico
                           P.O. Box 607
15                         Albuquerque, New Mexico  87103

16     For the Defendant:  SAMUEL L. WINDER, ESQ.
                           Romero & Winder, P.C.
17                         1905 Lomas Blvd., NW
                           Albuquerque, New Mexico  87104
18

19

20

21
       REPORTED BY:        CARMELA V. McALISTER, CRR, RPR, NM CCR 308
22                         United States Court Reporter
                           106 S. Federal Place
23                         Santa Fe, New Mexico  87501
                           Phone:  505-992-3829
24                         Email:  Carmela_McAlister@nmd.uscourts.gov

25         Proceedings recorded by mechanical stenography; transcript
       produced by computer.
```

**INDEX**

Court in Session                                          3

Argument by Mr. Winder                                   4

Response by Ms. Kastrin                                  8

Reply by Mr. Winder                                     16

Court's Ruling                                          19

Certificate of Official Court Reporter                  21

1      COURTROOM DEPUTY:  All rise.  United States District

2  Court is now in session, the Honorable Martha Vázquez presiding.

3      THE COURT:  Good afternoon, everyone.  Please be seated.

4    If I may please have appearances in the matter of United

5  States v. Perrault.

6      MS. KASTRIN:  Good afternoon, Your Honor.  Holland

7  Kastrin on behalf of the United States.  And together at counsel

8  table is Sean Sullivan, also on behalf of the United States.

9      THE COURT:  Good afternoon to you both.

10      MR. WINDER:  Good afternoon, Your Honor.  Samuel Winder

11  on behalf of Arthur Perrault.  He is using a walker, and I'm

12  hoping he can sit down during the proceedings, Your Honor.

13      THE COURT:  That's fine.

14      MR. WINDER:  Thank you.

15      THE COURT:  Counsel, we are here on an appeal of

16  detention.  I have read the Appeal of the United States Magistrate

17  Judge's Detention Order that was filed by the defense.  I've also

18  read the Government's Response to Defendant's Appeal of Detention

19  Order.  I have reviewed the Pretrial Services report.  I have also

20  reviewed the detention hearing -- the transcript of the detention

21  hearing that was held before Magistrate Judge Karen Molzen.  So I

22  believe -- oh, and then this morning I received a Reply from the

23  defense.  So I have reviewed that as well.

24    Was anything else filed that I've not identified?

25      MS. KASTRIN:  Not that the United States is aware of.

1        MR. WINDER:  No, Your Honor.  Thank you.

2        THE COURT:  All right.  So if you have additional

3  evidence, you may present it at this time.

4        MS. KASTRIN:  The United States has no additional

5  evidence.  We submit that the evidence that was presented and

6  considered by Judge Molzen, which has been recounted in both our

7  initial motion to detain and our response to his appeal of

8  detention, both supports the presumption that we believe applies

9  in this case and has not been rebutted.  Furthermore, we think

10  that it satisfies every single one of the 3142 factors that

11  support detention in this case.

12        THE COURT:  All right.  Mr. Winder?

13        MR. WINDER:  May it please the Court.

14        THE COURT:  Thank you.

15        MR. WINDER:  Your Honor, at the time of the detention

16  hearing, I did not have the Government's discovery, and that's --

17  that was, obviously, not their fault.  It was just not provided at

18  that time.  Since then, they have timely provided the discovery.

19     As set forth in my reply to the United States' response, Your

20  Honor, my client has been charged, obviously, with some serious

21  offenses, which occurred 26 to 27 years ago.

22     The only corroboration that we have in this case is there

23  is -- there is no corroboration, Your Honor.  It's John Doe's

24  statement.  And based upon my review of the discovery,

25  Mr. Perrault did not confess to sexually abusing John Doe.

1        So I raise that because one has to look at the weight of the

2   evidence as well with regard to the issue of detention.  And,

3   certainly, Your Honor is aware of the purposes of the Bail Reform

4   Act.  The Bail Reform Act expresses a preference for pretrial

5   release.  It prevents detention only after hearing -- only after

6   there's a finding that no condition or combination of conditions

7   will reasonably assure the appearance of the person as required.

8        Now, as set forth in my -- there's no additional evidence

9   that I have to present, but I'm going to present my argument with

10  regard to why I'm requesting that he be released to the third

11  party custody of La Pasada halfway house.

12       One of the arguments that the United States made at the

13  hearing and in their response is that my client is going to

14  abscond to Mexico.  He is not going to abscond to Mexico.  One of

15  the things I failed to include in my reply is he doesn't speak

16  Spanish.  He's an English speaker.  He's 80 years old.

17  Distinguishing the case that the United States set forth in their

18  response, Mr. Perrault's almost two times older than the Defendant

19  in the other case.  The Pretrial Services officer recommended that

20  the individual be detained.

21       My client, he has no passport.  Up until, hopefully, an hour

22  from now, when I get $200, that's all he has.  $200, hopefully,

23  will be given to me from the FBI, which was converted to U.S.

24  currency.  And I, hopefully, will take that to Sandoval County

25  tomorrow, so he'll have $200 on his books.  Up to now, he has

1    nothing.  He has absolutely no money in his accounts.

2         He has one friend in this entire country, and that

3    individual, I won't mention his name, he wanted to be here.  But

4    because of the focus of the media, he's not here.  He has no

5    family.  He has no ability to leave this country, much less the

6    city of Albuquerque.

7         Your Honor, I'm respectfully asking that you take judicial

8    notice of the Pretrial Services report.  The day of the detention

9    hearing I went over the report with Mr. Perrault, and before you

10   got onto the Bench, I again shared that with Mr. Perrault.

11        He will be on GPS monitoring, which is realtime.  They will

12   know if Mr. Perrault should leave La Pasada for any reason.  That

13   will be triggered, he'll be arrested, and he'll be back in

14   custody.  I've explained to Mr. Perrault the extreme consequences

15   that there will be if he is placed at the halfway house and should

16   abscond.

17        He came into the courtroom today using a walker.  He uses a

18   walker and cane.  I cannot fathom how Mr. Perrault would use a

19   walker to leave to Mexico or Canada, much less the City of

20   Albuquerque.  He has health conditions, as is outlined in the

21   Pretrial Services report.  He has glasses, which one side is

22   broken.  And sadly, I can say this candidly, the Sandoval County

23   Detention Center is not the best place for anyone to be, any of

24   the clients that I have.  The clients that I have, the majority of

25   them, thankfully, are at the Cibola Correctional Center, where

1    they have the proper medical attention that a person might need.

2    And sadly, I don't believe that's true with regard to the Sandoval

3    County Detention Center.

4        Your Honor, I've explained to him the extreme consequences if

5    he -- from my understanding, the only time that Mr. Perrault could

6    leave La Pasada would be to -- for health needs or possibly if

7    there is counseling, and he'll have to be escorted by a person.

8        Your Honor, I know, based upon my experience of being a

9    federal prosecutor and defense attorney, there are circumstances

10   where individuals that have A level offenses, where there is a

11   presumption -- and they're narcotics cases -- where they've been

12   released to the custody of the halfway house.

13       Now, one of the cases that I brought to the attention of

14   Judge Molzen was -- and it's *U.S. v. Benson Pete*.  It's a case,

15   which I've mentioned, and in the transcript.  My client was 78

16   years old at the time and was looking at a 30-year mandatory

17   minimum.  But he was released to the halfway house.  They were

18   very serious charges which he was looking at.  And these are very

19   serious charges that Mr. Perrault is looking at as well.

20       So there is precedence.  This is something that is not

21   unusual for a person like Mr. Perrault to be released to the third

22   party custody of La Pasada.  So I ask Your Honor, respectfully,

23   that you take judicial notice of the Pretrial Services report and

24   release him to the custody of the La Pasada under the very strict

25   conditions that are set forth in the report.  And I've told

1  Mr. Perrault on more than one occasion that if he should violate
2  any of those conditions, he'll be back in federal custody.
3      As I footnoted in my response or my reply as well, if he's at
4  the halfway house, it will be easier for me to go over discovery
5  with him, to conduct an investigation.  Certainly I will do that
6  if he's at Sandoval, but it would make it easier for me.
7      As I set forth in my reply as well, there's a likelihood this
8  case will be going to trial.  Certainly we can't say for sure at
9  this point.  But given what I've seen up to this point in the
10 discovery, there is a strong likelihood that it will.
11     Thank you, Your Honor.
12         THE COURT:  Ms. Kastrin, if you could please approach
13 the podium.
14         MS. KASTRIN:  Thank you, Your Honor.
15     First, I'd like to note that the Defendant has not come
16 forward with any new evidence.  And the Defendant really didn't
17 come forward with any evidence at the hearing in front of Judge
18 Molzen, other than pointing to the Pretrial Services report.  And
19 I think that that's important in this case for many reasons, but
20 mostly because six of our seven charges carry a presumption of
21 detention absent rebuttal.  And I don't believe that there has
22 been a rebuttal of that presumption in this case.
23     Now, with respect to pointing to the Pretrial Services
24 report, as Judge Molzen noted and as we reiterate today, that
25 would carry all the weight today if, in fact, Pretrial Services

1   considered all of the statutory factors that this Court is

2   required to consider in determining detention.  But they don't.

3   They expressly note in their report that they do not consider the

4   presumption of detention in coming up with their recommendation.

5       They also don't consider the weight and strength of the

6   evidence in this case, which, as I will discuss in a minute, the

7   Defendant completely misses the mark when he says that the

8   evidence in the indictment is uncorroborated.

9       And so for those reasons, we don't believe his reference to

10  the Pretrial Services report is persuasive.  And we believe that

11  Judge Molzen correctly noted that its failure to take into account

12  these very important statutory factors rendered their

13  recommendation only of limited value in coming to the conclusion

14  as to detention in this matter.

15      Now, turning to the argument as to flight risk, I'd like to

16  note that we cited to Judge Molzen that there's case law that

17  turning over a passport alone doesn't mitigate all risk of flight.

18  You don't need to have a passport -- and, in fact, you don't need

19  to have a fully-able body to abscond domestically anywhere.  But

20  as the Court notes from our full docket of criminal immigration

21  related crimes, you don't need a passport to cross international

22  borders either.  The fact that the Defendant doesn't speak Spanish

23  doesn't go to whether or not he's going to want to avoid charges

24  that, given his age, will guarantee that he'll probably spend the

25  rest of his life in prison if convicted.

1      But even if he doesn't try to go to Mexico, he could just try

2   to go elsewhere in New Mexico or elsewhere in the United States,

3   or we have evidence that the initial place he went when he tried

4   to flee facing the exact same conduct that he's before the Court

5   today, he went to Canada, which is an English-speaking country

6   that is right next to the United States.  And so we believe the

7   lack of a passport is not something that mitigates the risk of him

8   absconding in this case.

9      The Court right now, standing here today, has no track record

10  supporting the notion that he will remain in the United States.

11  On the other hand, the Court has a demonstrated track record of

12  flight.  When he fled in the 1990s, he did so after learning that

13  there were civil charges that were being contemplated being

14  brought against him for sexually abusing minors.  And that is when

15  he left.  He made it to Morocco.  When he was located in Morocco

16  and informed, There are these civil charges against you for the

17  same conduct, he didn't return.  He stayed there, again trying to

18  avoid the consequences of his conduct.

19      Now, today, he's not just facing civil penalties.  He's

20  facing criminal charges and the loss of his liberty.  Certainly

21  his incentive to flee has only increased over time.  And we would

22  note that when he learned that we were trying to bring him back to

23  face the indictment that was returned over a year ago against him,

24  he fought that, too.  He has demonstrated in every way that he has

25  a desire not to be around here for these charges, a willingness

1   and an ability to act on getting out of this jurisdiction.

2        And so with the presumption and with that in place, the track

3   record that you have to rely on is one of a defendant who flees.

4   And that is very important with respect to looking at the flight

5   risk in this case.

6        Additionally, looking at flight risk, is the fact that at its

7   heart, the evidence in this case shows that the Defendant was able

8   to perpetrate the abuse on minors for multiple decades by gaining

9   the trust of minors and, more importantly, their parents, and then

10  abusing that trust to then be able to perpetrate the harm that he

11  did.  And so his -- the notion that he's safe out on his own when

12  he has proven himself to be a capable and adept con artist with

13  other people, causes the United States concern that that is the

14  same thing that he could do to try to get somebody else to assist

15  him to get just outside of Albuquerque.  He can hide anywhere.

16  And he's a charming man with the ability to do that.  And Judge

17  Molzen found the same thing at the hearing based, on part, what

18  she had seen at his initial appearance on these charges.  So we

19  believe that also goes to flight risk.  It also goes to danger, as

20  I'll speak to in a moment.

21       Finally, I'd note that defense counsel brings up his lack of

22  ties, as though that supports the notion that you should release

23  him.  We believe that the case law and the factors speak

24  differently on that.  They look to community ties as an assurance

25  that someone will remain.  He has none.  He has one friend, by his

own admission.  He has no family remaining.  He has no job.  He

has no -- nothing that would cause him to stay here.  He has every

reason to try to leave again, because he's done it before.  And so

we believe all of the factors that he's discussed and that we've

discussed and that Judge Molzen looked at support the notion that

the presumption of flight risk applies.  But even if it didn't,

the 3142 factors on flight risk support his continued detention.

Now, looking to danger again, despite his claims that there

is simply one word against the other and it's absolutely

uncorroborated, that is not what the evidence will show in this

case.  The evidence will show that there were a number of

additional victims who recount similar abuse by the Defendant,

including acts of abuse on Kirkland Air Force base, which is the

thing that gave us jurisdiction -- one of the things that gave us

jurisdiction in this case.

We will be filing shortly a motion with the Court seeking the

admission at trial of the testimony of some of these witnesses

under Rules 404(b), 413 and 414.  The case law on those is very

favorable to the United States, especially in cases like this, for

this exact reason:  That it shouldn't be hanging out a victim of

sexual abuse as a minor to dangle on his own when we all know that

we have dozens of additional victims who have claimed similar

abuse by Father Perrault.  So while the Court can consider

evidence for detention that we couldn't get in at trial, we

believe that there is ample evidence that we should be able to get

1    in at trial that corroborates the charged victim in this case.

2         In addition to the other 404(b), 413 and 414 witnesses, we

3    have evidence of his admissions to parents of children,

4    contemporaneous with his acts of abuse, that we would seek to

5    admit, that corroborate that this is the conduct that he engages

6    in, that he sexually abused minors for dozens of years, including

7    the one that we were able to charge in this case.

8         Finally, while he didn't admit to abusing the one victim

9    charged in the indictment, he did admit to the FBI agents

10   voluntarily, that, yes, he has abused minors in his past.  That is

11   a powerful and huge admission that should cause the Court concern

12   as to his dangerousness for a number of reasons.  Just standing

13   alone, you have the Defendant facing charges of sexual abuse

14   against a minor who, as recently as a couple of weeks ago, was

15   admitting, yes, I sexually abused minors when I was operating as a

16   priest and a teacher in New Mexico.

17        But it should cause you concerns in another way.  It shows

18   how clever he is, that he thought, I can admit just as much as I

19   have to.  I'll admit to what I've done.  I'll just say I never did

20   it on federal land.  Because he thinks that that will get him away

21   scot-free on our specific charges that rely on federal land.  It

22   should also cause this Court concern because you have this

23   Defendant, who admits as recently as a couple of weeks ago, yes, I

24   abused minors while I was in New Mexico, who the evidence shows --

25             MR. WINDER:  Your Honor, I'm going to object with regard

1   to minors.  There's nothing in the discovery that I've seen with

2   regard to him confessing to other minors.  So I'm objecting.  This

3   is not trial we're going through.  It's like we're having a

4   closing argument with regard to trial today.  I'm objecting with

5   regard to any reference to any minors.  I have not seen that in

6   discovery, Your Honor.

7           THE COURT:  Counsel is permitted at this hearing to

8   outline the evidence that the Government has, as that is -- the

9   weight of the evidence is one of the factors the Court must

10  consider.

11          MS. KASTRIN:  I'd also like to state, we did turn over

12  the FBI 302 that detailed -- as well as a recording that detailed

13  his admission to the FBI agents in this case.

14          THE COURT:  So this was a recorded statement that you're

15  referring to?

16          MS. KASTRIN:  I don't know if this part was recorded or

17  not.  Because of the length of the flight, some of it was

18  recorded, some of it wasn't.  But we did do 305 that summarized

19  his admissions, and we did turn that over in discovery.  So we

20  rely that this is what the evidence will show.  But even without

21  that, we have many, many witnesses that will testify this is, in

22  fact, what he did.

23      Which gets to the other concerning part of this, which is, in

24  1992, when he learns that there are individuals who are coming

25  public with the fact of his abuse against minors, and he flees to

1    Morocco, and he admits to the FBI that he has engaged in sexual

2    misconduct with other young men, that the place that he goes to in

3    Morocco to work is at a school with children.  And so we believe

4    all of these are things that the Court can and should consider in

5    assessing the 3142 factors and whether the presumption in this

6    case should be -- has been rebutted, and whether this Defendant

7    should remain in custody.  And we submit that the evidence that

8    you have before you today supports Judge Molzen's conclusion that

9    he presents both a danger and a flight risk.

10        Let it not be forgotten, we had to seek extradition to get

11   him here today.  We had to go through an entire process in

12   Morocco, where they ultimately had to expel him and transfer

13   custody of him.  The *Benson Pete* case that he cited to, none of

14   the cases he cited to deal with our specific fact pattern of

15   having to go through a foreign legal process to get somebody's

16   presence here to speak to the charges.  We have cited the Court --

17   to this Court the *Frater* case that does speak to that specific

18   issue and how that is relevant to flight risk and danger.

19        And so we believe all of the evidence that the Court has

20   before it continues to support the decision that Judge Molzen

21   already rightfully made, and that is that the Defendant should

22   remain in custody pending trial in this matter.  Thank you.

23             THE COURT:  Thank you.  I have one other question.  Has

24   the Government already produced all of the discovery or is it

25   still being produced?

1    MS. KASTRIN:  So we have produced -- we produced the

2  discovery related to the charges in the indictment.  We have not

3  produced the discovery related to our intended 413 and 414

4  witnesses, but we intend to do so as part of filing the motion

5  with the Court seeking the Court's ruling on us being able to rely

6  on those witnesses at trial.

7    THE COURT:  Okay.  Thank you.

8   Mr. Winder?

9    MR. WINDER:  Thank you.  Ms. Kastrin has indicated that

10  we have no evidence.  Well, they have no evidence, because in the

11  first detention hearing, the matter proceeded by proffer.  So it

12  was argument, just like I'm presenting to this Court today.  So

13  they have no evidence.  It's argument, pure argument, that

14  Ms. Kastrin's raising and argument that Mr. Sullivan raised at the

15  detention hearing.  So all of this pointing out to all of these

16  issues are not evidence.

17    THE COURT:  Did you object to a presentation by the

18  Government of --

19    MR. WINDER:  I didn't object, Your Honor.

20    THE COURT:  You could have.

21    MR. WINDER:  I didn't object.  But this is a *de novo*

22  hearing today.  They have no evidence.  It's all presented by

23  argument today.

24    THE COURT:  Ms. Kastrin?

25    MS. KASTRIN:  And if I may, separately, at the hearing

1  he didn't object, but there's case law in the Tenth Circuit that

2  for purposes of a detention hearing, the United States is

3  permitted to proceed by proffer.

4          THE COURT:  Yes.

5          MS. KASTRIN:  This is especially true when there's a

6  presumption.  And then it becomes on him whether he wants to bring

7  forth any evidence, which he has not done.

8          THE COURT:  The Government is correct.

9          MR. WINDER:  And this is a *de novo* hearing as well.

10  They have no evidence that they've presented.  It's all been

11  argument that they've presented.

12      With regard to the evidence that they've presented, as Your

13  Honor asked, that evidence has not been produced to us with regard

14  to the other minors, which they've alluded to.

15      Your Honor, again, with regard to -- I'm relying on the

16  Pretrial Services report.  I'm relying on the fact that the Bail

17  Reform Act does fashion that an individual -- a finding that no

18  condition or combination of conditions will reasonably assure the

19  appearance of the person as required.  There are conditions.

20  There's a combination of conditions, which are set forth in the

21  Pretrial Services report.  One of the significant factors, he'll

22  be on GPS monitoring, Your Honor.

23      As I was sitting there, it appears as if I was hearing the

24  closing argument at a trial.  My client is innocent until proven

25  guilty.  The charges that are set forth in the indictment relate

1    to one person, John Doe, not to the other individuals which

2    Ms. Kastrin has mentioned.  And there's no evidence.  It's her

3    argument.  All we have today is our arguments.  No evidence.  I

4    have no evidence.  She has no evidence.  It's our arguments.  And

5    my argument lies primarily on Pretrial Services who makes

6    recommendations, the U.S. Magistrate Judges and Federal District

7    Court Judges every single day.

8         And they are familiar with the circumstances of individuals

9    that are released to the halfway house.  And I'm confident --

10   Mr. Perrault cannot say anything today, but I know if he could say

11   something, he would say, Your Honor, I promise I will not leave

12   New Mexico.  I will not leave Albuquerque.  He wants to answer

13   these charges at trial.  I cannot say today with certainty that

14   this case will go to trial, but there's a strong likelihood that

15   it will go to trial.  And Mr. Perrault will not abscond because he

16   wants to clear his name with regard to those charges that are in

17   the indictment.

18        So, Your Honor, I'd ask, respectfully, that you release him

19   to the La Pasada halfway house under the very strict conditions

20   that are outlined in the Pretrial Services report.  Thank you.

21             THE COURT:  Thank you, Mr. Winder.

22        Yes, Ms. Kastrin?

23             MS. KASTRIN:  Can I speak to one statement that he made?

24   While I don't think it's true, he just said, I have no evidence

25   and the United States has no evidence.  And if that were true,

1     because of the presumption, we still prevail.

2         And so I don't believe that's true.  I do believe we've set

3     forth evidence.  In fact, we have a probable cause finding by the

4     grand jury in the indictment.  And we are able to proceed by

5     proffer and we have proffered that evidence.  But given the

6     presumption and his admission that he has put on no evidence, we

7     believe the law supports continued detention.

8         THE COURT:  All right.  I have, as I've indicated,

9     reviewed everything that has been submitted to me.  And I must

10    agree with Judge Molzen's reasoning and her analysis, and it is

11    consistent with the arguments and the presentations that I have

12    heard today.

13        With regard to flight risk, I do find that Mr. Perrault does

14    present a flight risk.  As has been outlined by the Government, in

15    the face of the facts back in 1992, I believe it was, the decision

16    made by Mr. Perrault to flee is, as the Government indicates, a

17    demonstrated track record of flight.  And, also, once he was in

18    Morocco, when he knew and was advised of a pending civil lawsuit,

19    he chose to write a letter instead of appearing.  It took an

20    extradition, instead of a voluntary flight to the United States,

21    to get Mr. Perrault here to face these charges.

22        The fact that he doesn't speak Spanish doesn't matter and is

23    not much comfort to this Court.  As most countries, perhaps with

24    the exception of ours, are bilingual.  He could easily find people

25    to understand him and people that speak English in Mexico.  It

1   does not take a passport to enter the Republic of Mexico.

2        The Court finds, by a preponderance of the evidence, that

3   Mr. Perrault does present a flight risk.  The Court also finds, by

4   clear and convincing evidence, that Mr. Perrault presents a danger

5   to the community.  Therefore, I do find that even though the

6   Pretrial Services report finds that there are conditions that the

7   Court could impose, as has been noted by the Government and was

8   noted also by Judge Molzen, Pretrial Services cannot take into

9   consideration the weight of the evidence that has been outlined or

10  the presumption of detention.

11       As the defense knows, it is permitted to proceed by proffer,

12  both before Judge Molzen and at this level on appeal.  The Court

13  has, on appeal, considered this matter *de novo*.  And based upon a

14  *de novo* consideration of all of these factors, the Court again, to

15  reiterate, does find that there are no conditions that can be put

16  into place that can reasonably assure the appearance of

17  Mr. Perrault and can reasonably assure the safety of the community

18  in light of the evidence that has been outlined in this case.

19       Is there anything further on behalf of the Government?

20            MS. KASTRIN:  No, Your Honor.  Thank you.

21            THE COURT:  Anything further, Mr. Winder?

22            MR. WINDER:  No, Your Honor.  Thank you.

23            THE COURT:  All right, everyone.  Thank you very much

24  for your attendance and your presentations.  We will be in recess.

25  **(Court in recess at 2:00 p.m.)**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF NEW MEXICO

 3   _____
                                       )
 4   UNITED STATES OF AMERICA,         )    No. 17-cr-02558-MV
            Plaintiff,                 )
 5                                     )
        vs.                            )
 6                                     )
     ARTHUR PERRAULT,                  )
 7          Defendant.                 )
     _____)
 8

 9

10              CERTIFICATE OF OFFICIAL COURT REPORTER

11        I, Carmela V. McAlister, CRR, RPR, New Mexico CCR #306,

12   Federal Official Realtime Court Reporter, in and for the United

13   States District Court for the District of New Mexico, do hereby

14   certify that pursuant to Section 753, Title 28, United States

15   Code, that the foregoing is a true and correct transcript of the

16   stenographically reported proceedings held in the above-entitled

17   matter on October 16, 2018, and that the transcript page format is

18   in conformance with the regulations of the Judicial Conference of

19   the United States.

20        Dated this 4th day of November 2018.

21

22          /s/
     _____
23   CARMELA V. McALISTER, CRR, RPR, NM CCR #306
     United States Court Reporter
24   106 S. Federal Place
     Santa Fe, New Mexico  87501
25   Phone:  505-992-3829
     Email:  Carmela_McAlister@nmd.uscourts.gov
```